# In the United States Court of Federal Claims
(Pro Se)

|  |  |  |
|---|---|---|
| DEWAYNE A. WILLIAMS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 23-1965C<br>(Filed: October 18, 2024) |
| THE UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) ) ) ) | |

Dewayne A. Williams, Pro Se, The Colony, Tex.

Collin T. Mathias, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were William J. Grimaldi, Assistant Director, Patricia M. McCarthy, Director, and Brian M. Boynton, Principal Deputy Assistant Attorney General, for Defendant. Captain Andrei Kouzema, U.S. Department of the Navy, Office of the Judge Advocate General, General Litigation Division, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Chief Judge.**

Pro se plaintiff Dewayne A. Williams was administratively separated from the United States Navy in 2016 under other than honorable conditions. His administrative separation followed court-martial proceedings during which he entered guilty pleas to multiple criminal charges.

In this action, which is currently before the Court on cross-motions for judgment on the administrative record, Mr. Williams contends that the Navy violated his pretrial agreement and the general court-martial order by administratively separating him rather than transferring him to the Fleet Reserve. For the reasons set forth below, the Court concludes that Mr. Williams' arguments lack merit. Therefore, Mr. Williams' motion is **DENIED**, and the government's cross-motion is **GRANTED**.

## BACKGROUND

I.      **The Charges Against Mr. Williams**

Mr. Williams enlisted in the Navy in September 1993 and served on active duty for over 22 years as an Information Systems Technician. Admin. R. ("AR") at 0048, 0079, Docket No. 12. In June 2015, Mr. Williams received notice that multiple criminal charges and specifications against him had been referred to a general court-martial. Id. at 0071–76. The charges included, among others, engaging in sexually inappropriate and physically intimidating conduct with sailors junior in rank to him, wrongfully intercepting electronic communications, making false official statements to law enforcement officials, willfully disobeying and violating lawful orders, and wrongfully destroying another sailor's personal property. Id. at 73–76.

II.     **Mr. Williams' Pretrial Agreement**

Beginning in December 2015, Mr. Williams was confined pending trial at Fleet Activities Yokosuka, in Japan. AR at 0077. On January 6, 2016, Mr. Williams—who was then represented by counsel—entered a pretrial agreement ("PTA") with Rear Admiral M.J. Carter, the convening authority.[1] Id. at 0024–38. Mr. Williams agreed to plead guilty to most of the charges against him. Id. at 0028–34. In return, Rear Admiral Carter agreed to withdraw the remaining charges. Id. at 0027. Rear Admiral Carter also agreed to (1) remit any punitive discharge Mr. Williams received from the general court-martial; (2) suspend any sentence of confinement in excess of eight years; (3) limit any fines adjudged against Mr. Williams to $5,000.00; and (4) suspend a reduction in rank below the pay grade of E-5 for the period of Mr. Williams' confinement. Id. at 0036–37.

In addition, the PTA contained the following provision, which serves as the basis for Mr. Williams' claims in this case:

> I further understand that I will not receive any pay or allowances during any period of confinement I may serve. This Convening Authority will not initiate any administrative separation processing that may interfere with my request for transfer to Fleet Reserve. In addition, this Convening Authority will endorse the transfer to Fleet Reserve at the paygrade of E-5 or that which was adjudged, whichever is higher. However, this does not preclude any subsequent Convening Authority from initiating a separation action triggered by a request for transfer to Fleet Reserve. In exchange, I will immediately submit my request for transfer to Fleet Reserve. I will request transfer to the Fleet Reserve but this agreement does not affect the outcome of any administrative separation that results in a retirement grade determination board.

---

[1] A "convening authority" is a commanding officer who has the authority to convene a court-martial. See Manual for Courts-Martial, Part II, Rules for Courts-Martial 103(6), 504(a), 504(b)(1) (2012); 10 U.S.C. § 822(a).

Id. at 0037.

### III.   General Court-Martial, Sentencing, and Transfer

At his January 13, 2016 court-martial, Mr. Williams entered guilty pleas to a number of the charges as provided in the PTA. AR at 0040–45, 0048. The presiding military judge sentenced him to be "reduced to the paygrade of E1 . . . confined for 12 years . . . and . . . discharged from the Naval Service with a Dishonorable Discharge." Id. at 0054; see also id. at 0020, 0045. Consistent with the PTA, Rear Admiral Carter then directed that Mr. Williams' sentence be reduced to eight years and that his dishonorable discharge be suspended for the period of confinement and remitted without further action. Id. at 0045–46; see also id. at 0020–21.

After sentencing, Mr. Williams was once again confined at Fleet Activities Yokosuka. Id. at 0054. On February 29, 2016, he was transferred to Naval Consolidated Brig Miramar to serve the remainder of his sentence in accordance with permanent change of station orders. Id. at 0284; see Naval Mil. Pers. Manual ("MILPERSMAN") 1640-030 (identifying Naval Consolidated Brig Miramar as a confinement facility for "members serving adjusted sentences not to exceed 10 years"). At Miramar, he was attached to a new commanding officer (the Commanding Officer of Naval Consolidated Brig Miramar) and a different court-martial convening authority (the Commander of Navy Personnel Command).

### IV.   Mr. Williams' Administrative Separation

On April 15, 2016, in accordance with paragraph 2 of MILPERSMAN 1616-040, which details commanding officers' reporting obligations following courts-martial proceedings, the Commanding Officer of Naval Consolidated Brig Miramar submitted a report regarding Mr. Williams' misconduct to the Commander of Navy Personnel Command. AR at 008. The report included the results of the court-martial and the Commanding Officer's request that Mr. Williams be administratively separated from the Navy "with an Other Than Honorable Characterization of Service due to a guilty finding of serious misconduct." Id.; see also MILPERSMAN 1616-040 ¶ 2(c) (If at the conclusion of the court-martial, the defendant was found guilty but a discharge was not awarded, "the [commanding officer] must provide a recommendation for or against administrative separation processing.").

On May 24, 2016, the convening authority that then had jurisdiction over Mr. Williams, the Commander of Navy Personnel Command, directed that Mr. Williams be processed for administrative separation pursuant to, among other provisions, MILPERSMAN 1910-142, which sets forth policies and procedures for separating service members who commit serious offenses. AR at 0007, 0048. Mr. Williams received notice of his processing on November 14, 2016. Id. at 0004–06; see MILPERSMAN 1910-402 ¶ 1(b). He affirmatively waived his rights to counsel and an administrative board. AR at 0004.

The processing notice also advised Mr. Williams of his right to request transfer to the Fleet Reserve in lieu of administrative separation, but he neither indicated that he was electing

that right nor waiving it. Id. at 0005. Likewise, he refused to sign an acknowledgement that he had received the notice. Id.

On December 2, 2016, the Commanding Officer of Naval Consolidated Brig Miramar sent the Commander of Navy Region Southwest a formal recommendation that Mr. Williams be administratively separated. Id. at 0002–03. The Commander of Navy Region Southwest then forwarded the recommendation to the Commander of Navy Personnel Command on December 19, 2016. Id. at 0001–03. The Commanding Officer stated in the recommendation that Mr. Williams' "serious misconduct is detrimental to operational readiness and is inconsistent with Navy core values." Id. at 0003. The Commanding Officer concluded that Mr. Williams "has no potential for further naval service due to his behavior and therefore should be separated for misconduct—commission of a serious offense." Id.

As noted, Mr. Williams did not request transfer to the Fleet Reserve in the form that notified him of his administrative separation. Id. at 0005. Nonetheless, the Chief of Naval Personnel considered whether such a transfer was appropriate and, concluding that it was not, recommended that the Acting Assistant Secretary of the Navy for Manpower and Reserve Affairs "administratively separate [Mr. Williams] with an Other than Honorable characterization of service" rather than transfer him to the Fleet Reserve. Id. at 0048–50.

On October 16, 2017, the Acting Assistant Secretary concurred with the recommendation, citing Mr. Williams' "egregious and prolonged misconduct." Id. at 0051. The Acting Assistant Secretary directed that Mr. Williams be administratively separated, as recommended, with an other than honorable characterization of service. Id.

## V.     The Present Action

On November 3, 2023, Mr. Williams filed his complaint in this court. Compl., Docket No. 1. In his complaint, he alleges that, in separating him from the Navy and not transferring him to the Fleet Reserve, the Navy violated the PTA as well as the terms of his general court-martial order, which he says stated that he would be returned to the pay grade of E-5 upon release from confinement. Id. at 1–2. He seeks an order directing the Navy to transfer him to the Fleet Reserve, retroactive to 2016, and an award of the back pay that he alleges he would have received had he been transferred at that time. Id. at 3.

The government filed the administrative record on February 22, 2024. On March 15, 2024, Mr. Williams filed his motion for judgment on the administrative record. Pl.'s Mot. for J. on Admin. R. ("Pl.'s MJAR"), Docket No. 13. The government filed its cross-motion on May 15, 2024. Def.'s Cross-Mot. for J. on Admin. R. and Resp. to Pl.'s MJAR ("Def.'s MJAR"), Docket No. 17. Mr. Williams filed his response to the government's cross-motion on May 29, 2024. Pl.'s Resp. to Def.'s MJAR and Reply in Supp. of Pl.'s MJAR ("Pl.'s Resp."), Docket No. 18. The government filed its reply on June 12, 2024. Def.'s Reply in Supp. of Def.'s MJAR ("Def.'s Reply"), Docket No. 19.

The Court held an oral argument on the parties' cross-motions on September 30, 2024. See Order, Docket No. 20.

**DISCUSSION**

I.  **Legal Standard**

The Court of Federal Claims reviews decisions of military officials on the basis of the administrative record. See, e.g., Walls v. United States, 582 F.3d 1358, 1367 (Fed. Cir. 2009). Parties may move for judgment on the administrative record pursuant to RCFC 52.1. In ruling on such a motion, the Court makes "factual findings from the record evidence as if it were conducting a trial on the record." Bannum, Inc. v. United States, 404 F.3d 1346, 1353–54 (Fed. Cir. 2005).

The scope of review of a military official's decision is a narrow and deferential one. Prestonback v. United States, 139 Fed. Cl. 380, 383 (2018). The Court is "limited to determining whether a decision . . . is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." Melendez Camilo v. United States, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)).

Application of the arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Heisig, 719 F.2d at 1157. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Strand v. United States, 951 F.3d 1347, 1351 (Fed. Cir. 2020) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig, 719 F.2d at 1156.

II.  **The Navy's Decision to Process Mr. Williams for Administrative Separation Rather than Transfer Him to the Fleet Reserve Was Consistent with Its Regulations and the Pretrial Agreement**

Mr. Williams argues that the Navy erred in processing him for administrative separation and that it should have instead transferred him to the Fleet Reserve. Pl.'s MJAR at 2–4. This argument lacks merit. The Navy's actions were consistent with, and in fact compelled by, its regulations and, as described below, did not violate the PTA.

A.  **The Navy Followed Its Rules that Mandated Processing Mr. Williams for Administrative Separation**

The Navy's administrative separation policy provides a means for it to, among other things, "[a]ssess the suitability of persons to serve on the basis of their conduct and their ability to meet the required standards of performance" and "[m]aintain standards of performance and conduct through characterization of service in a system that emphasizes the importance of honorable service." MILPERSMAN 1910-010 ¶ 1(a)–(b). Navy rules provide that "[c]ertain bases for administrative separation . . . are so detrimental to good order and discipline, mission readiness, and appropriate standards of performance and conduct, that processing for [administrative separation] is mandatory." MILPERSMAN 1910-233 ¶ 1. For example,

5

commanding officers must process individuals for separation where they engage in "sexual misconduct that could be charged as a violation of . . . articles 120, 120a, 120b, or 120c" of the Uniform Code of Military Justice. MILPERSMAN 1910-233 ¶ 1(a). Mr. Williams pleaded guilty to violations of Article 120a (stalking). AR at 0042–43, 0048, 0054, 0058–60. Therefore, Navy rules required Mr. Williams' commanding officer to process him for administrative separation.

Further, where, as here, a sailor's misconduct requires administrative separation processing, the commanding officer must consider whether the circumstances surrounding the misconduct warrant an other than honorable characterization of service. See MILPERSMAN 1910-233 ¶ 1; MILPERSMAN 1910-142 ¶ 4. If so, then the sailor must be notified that they are entitled to an administrative separation hearing and other rights. MILPERSMAN 1910-142 ¶ 4; see also MILPERSMAN 1910-402. The sailor may choose to waive their rights and, if they do so, the commanding officer must provide all applicable reasons for separation and assign the sailor a characterization of service that, normally, is "commensurate with [the] least favorable reason for processing." MILPERSMAN 1910-708 ¶ 1(a)–(b); see also AR at 0004.

As described above, these procedures were followed in Mr. Williams' case. His commanding officer at Naval Consolidated Brig Miramar processed him for administrative separation based on his "commission of a serious offense," recommending that he be separated with an other than honorable characterization of service. AR at 0002–03, 0008. The recommendation went up the chain of command until it received final approval from the Acting Assistant Secretary of the Navy for Manpower and Reserve Affairs. Id. at 0048–51. To the extent, therefore, that Mr. Williams contends that the Navy did not follow its own regulations in processing his administrative separation, or that its decision to discharge him was otherwise arbitrary and capricious, or contrary to law, that argument lacks merit.

**B.     The Navy's Decision Not to Transfer Mr. Williams to the Fleet Reserve Was Consistent with Its Rules**

The Navy also complied with its regulations in declining to transfer Mr. Williams to the Fleet Reserve in lieu of separation. Under 10 U.S.C. § 8330(b) "[a]n enlisted member of the Regular Navy or the Navy Reserve who has completed 20 or more years of active service in the armed forces may, at his request, be transferred to the Fleet Reserve." Once transferred, the service member is "entitled, when not on active duty, to retainer pay." 10 U.S.C. § 8330(c)(1). A member of the Fleet Reserve who has completed thirty years of service is automatically transferred to the retired list pursuant to 10 U.S.C. § 8331(a)(1).

A decision whether to transfer an eligible sailor to the Fleet Reserve lies within the exclusive discretion of the Secretary of the Navy. See Lowry v. United States, No. 20-682C, 2021 WL 4888874, at *4 (Fed. Cl. Oct. 19, 2021); Pope v. United States, 172 Fed. Cl. 149, 157 (2024); see also MILPERSMAN 1910-166 ¶ 1 ("Congress has granted authority to the Secretary of the Navy (SECNAV) to approve requests to transfer those enlisted personnel who complete 20 years of creditable active duty service to the Fleet Reserve. The discretion of SECNAV to approve such transfers is absolute.").

MILPERSMAN 1830-040 provides the eligibility criteria for requesting a transfer to the Fleet Reserve and procedures for initiating the request. It also prescribes criteria that disqualify sailors from eligibility to initiate a request to transfer to the Fleet Reserve, including where a sailor is "serving a sentence of a court-martial[.]" MILPERSMAN 1830-040 ¶ 4(a)(2).

Mr. Williams contends that in light of this provision, the Navy lacked the authority to process any request on his behalf to be transferred to the Fleet Reserve. Pl.'s MJAR at 3–4. It is unclear to the Court how this argument helps Mr. Williams, who claims that the Navy should have transferred him. See id. at 4. Indeed, the regulations at MILPERSMAN 1910-166 gave Mr. Williams the option to request transfer to the Fleet Reserve notwithstanding his court-martial conviction and sentencing. Paragraph 4 of those regulations provides that a sailor serving a sentence of a court-martial may be considered for transfer to the Fleet Reserve if they "request a waiver of [administrative separation] processing" for that purpose.  See also OPNAVINST 1811.3A ¶ 3(b) ("[T]ransfer to the Fleet Reserve of enlisted members in lieu of administrative separation is covered in [MILPERSMAN 1910-166].").

To be sure, Mr. Williams did not request transfer to the Fleet Reserve in lieu of administrative separation. AR at 0005. The Chief of Naval Personnel nonetheless considered whether to transfer Mr. Williams to the Fleet Reserve. Id. at 0048–50. But the Court fails to see how the Navy's decision to consider transferring Mr. Williams harmed him in any way. Mr. Williams had affirmatively waived his right to an administrative board, and, in any event, the Navy declined to transfer him. Id. at 0004, 0051.

Further, even had Mr. Williams affirmatively elected to be considered for a transfer to the Fleet Reserve, the result would be the same—denial of his request. As noted, the Acting Assistant Secretary concurred with the Chief of Naval Personnel's recommendation not to transfer Mr. Williams and denied the transfer in light of Mr. Williams' misconduct. Id. at 0048–51. That action was consistent with the MILPERSMAN 1910-166, paragraph 1, which states that the Secretary of the Navy "may deny . . . requests [for transfer to the Fleet Reserve] . . . based on the member's service, conduct, performance, or for any other reason which is supported by sufficient evidence." Therefore, to the extent that Mr. Williams challenges the Acting Assistant Secretary's decision denying him a transfer to the Fleet Reserve, his arguments lack merit.

### C.  The Pretrial Agreement

Finally, Mr. Williams contends that the Navy violated paragraph 6 of his pretrial agreement. Pl.'s MJAR at 2, 4. According to Mr. Williams, paragraph 6 precluded the Navy from processing him for administrative separation and required that Rear Admiral Carter endorse his transfer to the Fleet Reserve at the pay grade of E-5. Id.; see also AR at 0037.

Paragraph 6 is not a model of clarity. Nonetheless, there is nothing in its language that prohibited the Navy from processing Mr. Williams for administrative separation when it did so. Nor is there anything in paragraph 6 that precluded the Navy from denying him a transfer to the Fleet Reserve.

Paragraph 6 provides that "[t]his Convening Authority will not initiate any administrative separation processing that may interfere with my request for transfer to Fleet Reserve." AR at 0037 (emphasis added). It further states that "this Convening Authority will endorse the transfer to Fleet Reserve at the paygrade of E-5 or that which was adjudged, whichever is higher." Id. (emphasis added). But paragraph 6 also states that "this does not preclude any subsequent Convening Authority from initiating a separation action triggered by a request for transfer to Fleet Reserve." Id. (emphasis added).

In this case, the "subsequent Convening Authority" (the Commander of Navy Personnel Command) and not "this Convening Authority" (Rear Admiral Carter) initiated the separation action. See id. at 0007, 0048. Further, because the initial convening authority (Rear Admiral Carter) no longer had jurisdiction over Mr. Williams when his transfer to the Fleet Reserve was under consideration, it had no role to play in "endorsing" Mr. Williams' transfer at any particular grade. See id. at 0037.

Finally, whatever obligations the Navy took on in paragraph 6 of the PTA were "[i]n exchange" for Mr. Williams requesting a transfer to the Fleet Reserve. Id. Mr. Williams never made such a request. For that reason as well, it does not appear that the Navy was obligated to do anything further under paragraph 6.

## CONCLUSION

Based on the foregoing, Mr. Williams' motion for judgment on the administrative record, Docket No. 13, is **DENIED**. The government's cross-motion, Docket No. 17, is **GRANTED**. The Clerk shall enter judgment accordingly.

   **IT IS SO ORDERED.**

                                                 ELAINE D. KAPLAN
                                                 Chief Judge